UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
TODD FORD, JR.,               :
                              :
        Plaintiff,            :    Civ. No. 20-18863 (NLH) (AMD)
                              :
    v.                        :    OPINION
                              :
                              :
WARDEN RICHARD SMITH, et al., :
                              :
        Defendants.           :
                              :
_____:

APPEARANCES:

Jennifer C. Critchley, Esq.
Aaron H. Gould, Esq.
Connell Foley LLP
One Newark Center
1085 Raymond Boulevard
Newark, New Jersey 07102

        *Counsel for Plaintiff*

Victor A. Afanador, Esq.
Christopher A. Khatami, Esq.
Lite DePalma Greenberg & Afanador, LLC
570 Broad Street, Suite 1201
Newark, New Jersey 07102

        *Counsel for Defendants, Warden Richard Smith, Warden*
*Charles Warren and Cumberland County*

Stephen D. Holtzman, Esq.
Jeffrey S. McClain, Esq.
Lilia Londar, Esq.
Holtzman McClain & Londar, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221

        *Counsel for Defendant Kristina Smith*

HILLMAN, District Judge

Defendants Warden Richard Smith, Warden Charles Warren and Cumberland County move to dismiss Plaintiff Todd Ford, Jr.'s first amended complaint under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 72.  Defendant Kristina Smith joins in that motion.  ECF No. 76.  Plaintiff opposes the motions to dismiss and cross moves to amend the complaint.  ECF No. 80.  The parties jointly move to seal certain exhibits.  ECF No. 90.

For the reasons stated below, the Court will deny the motions to dismiss and grant the cross-motion to amend.  The motion to seal will be granted in part.

I.   BACKGROUND

This matter is one of many cases presently before the Court in which a pretrial detainee at the Cumberland County Jail ("Cumberland Jail" or "Jail") alleges prison and county officials created unconstitutional conditions of confinement when they failed to respond to the COVID-19 pandemic that began in early 2020.  A class action addressing the Jail's failures in COVID-19 testing, protection, and quarantine and isolation procedures and seeking only injunctive relief is presently pending before the Court.  Brown v. Warren, 20-7907 ("Class Action").  Here, Plaintiff Todd Ford, Jr., filed his original complaint pro se, ECF No. 1, and filed an amended complaint with

leave of court after the appointment of pro bono counsel.[1]  ECF
No. 55.  Defendants now move to dismiss the amended complaint.
ECF Nos. 72 & 76.  Plaintiff opposes the motions and cross-moves
for leave to file a second amended complaint.  ECF No. 80.

II.  STANDARD OF REVIEW

When considering a motion to dismiss a complaint for
failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the non-moving
party.  A motion to dismiss may be granted only if the plaintiff
has failed to set forth fair notice of what the claim is and the
grounds upon which it rests that make such a claim plausible on
its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).
Although Rule 8 does not require "detailed factual allegations,"
it requires "more than an unadorned, the-defendant-unlawfully-
harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citing Twombly, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must
"tak[e] note of the elements [the] plaintiff must plead to state

---

[1] The Court acknowledges and appreciates the advocacy of Jennifer
C. Critchley, Esq. and Aaron H. Gould, Esq. of Connell Foley
LLP, who accepted appointment as pro bono counsel pursuant to 28
U.S.C. § 1915(e)(1) and this Court's Plan for Appointment of
Attorneys in Pro Se Civil Actions, see App. H of the Local Civil
Rules of the District of New Jersey.

a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).  "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings."  Id. at 790.

III. DISCUSSION

A.   Motion to Amend

Rule 15(a)(2) states that after a responsive pleading has been served "a party may amend its pleading only with the opposing party's written consent or the court's leave[,]" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] district court has the discretion to deny this request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith[,] or dilatory motives[;] (2) the amendment would be futile[;] or (3) the amendment would prejudice the other party."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

Defendants do not argue that Plaintiff has demonstrated undue delay, bad faith, or dilatory motive, nor do Defendants assert that they will be prejudiced by the amendment.  They argue that "while Plaintiff cobbles together new allegations in an effort to survive this motion, the effort is futile."  ECF No. 88 at 6.  Amendment of a complaint is futile when the amended complaint fails to state a claim upon which relief can be granted.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."  Id.

In the interest of judicial economy and in the absence of prejudice, the Court will consider the proposed second amended complaint ("SAC") as the operative pleading for purposes of the motions to dismiss.  See Diversified Indus., Inc. v. Vinyl Trends, Inc., No. 13-6194, 2014 WL 1767471, at *1 n.1 (D.N.J. May 1, 2014).

B.   Failure to Exhaust

Defendants argue the complaint must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  See 42 U.S.C. § 1997e(a).  Failure to exhaust administrative remedies

5

is an affirmative defense under the PLRA, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). See also Small v. Camden Cty., 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."). As exhaustion is not a pleading requirement, it is not an appropriate subject for a motion to dismiss for failure to state a claim. Defendants may raise this defense in an appropriately supported motion for summary judgment. See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

C.   Claim-Splitting Doctrine

Defendants further argue that Plaintiff's claims are precluded by the claim-splitting doctrine, "the longstanding bar against having a single party-plaintiff simultaneously maintain two actions against the same defendant." Pennsylvania v. Navient Corp., 967 F.3d 273, 286 (3d Cir. 2020) (citing Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977) (en banc)). Defendants argue that Plaintiff's status as a representative in the Class Action warrants dismissal "because a final judgment in the Class Action would nevertheless preclude this action." ECF No. 73 at 6.

6

Plaintiff's action is distinguishable from Walton.  "There, a single plaintiff filed two separate employment lawsuits based on the same underlying facts, in the same court, against the same defendant."  Navient Corp., 967 F.3d at 286 (citing Walton, 563 F.2d 69-70).  Plaintiff did not file the Class Action as a single plaintiff seeking damages for himself; it was filed with other class representatives on behalf of present and future inmates at the Cumberland Jail.  Therefore, "a single plaintiff" did not file both actions.  More significantly, the Class Action and Plaintiff's complaint serve entirely different purposes.

Plaintiffs in the Class Action seek "the means to take reasonable precaution against the spread of the [COVID-19] virus and receive an appropriate level of treatment and care . . . ." Consent Order, Brown v. Warren, No. 20-7907 (D.N.J. May 13, 2021) (ECF No. 126 at 2).[2]  Here, Plaintiff seeks compensation for the alleged injuries that he personally incurred at the Cumberland Jail.  Defendants' argument that a final order in the Class Action will preclude any relief here "is a distraction. [Defendants] can only speculate as to what will happen if both actions proceed."  Navient Corp., 967 F.3d at 286 n.9. Moreover, the Consent Order specifically stated that the Class Action "does not adjudicate or resolve any other claim asserted

---

[2] The Court takes judicial notice of this public record.

in any other action or petition brought by any current or future member of the class or any other former detainee at the Cumberland Jail for monetary damages, nominal damages, habeas corpus, or individual relief not encompassed by the within Consent Order."  Consent Order, No. 20-7907 (ECF No. 126 at 7).

The Court will not dismiss the complaint under the claim-splitting doctrine.

D.    Count One – Deliberate Indifference to Serious Medical Need

Defendants argue that Plaintiff has failed to state a deliberate indifference claim.  Claims by pretrial detainees for failing to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause and are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]"  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  The Court will therefore review Plaintiff's claims under the same standard used to evaluate similar claims brought under the Eighth Amendment.  Moore v. Luffey, 767 F. App'x 335, 340 (3d Cir. 2019).[3]

---

[3] The Supreme Court has applied an "objectively unreasonable" standard to analyze an excessive force claim under the Fourteenth Amendment.  Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015). However, the Third Circuit has declined to address whether the "objectively unreasonable" standard applies to a deliberate indifference to medical need analysis.  Moore, 767 F. App'x at 340 n.2.

To state an Eighth Amendment Claim, a plaintiff must allege facts indicating that defendants were deliberately indifferent to his or her serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To accomplish this, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (second alteration in original)).

"A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it's so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Mitchell v. Beard, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)).  "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  "[I]f 'unnecessary and wanton infliction of pain,' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature

contemplated by the eighth amendment." Id. (quoting Estelle, 429 U.S. at 103).

Plaintiff alleges he contracted COVID-19 and was symptomatic. SAC ¶ 36, 50. He further alleges he has experiences "residual health problems" as a result of COVID-19. Id. ¶ 50. The Court concludes Plaintiff has alleged a serious medical need for purposes of the motions to dismiss. See Clark v. Kalteski, No. 5:22-CV-81, 2022 WL 1172975, at *3 (E.D. Pa. Apr. 20, 2022) ("The severe abdominal pains, headaches, and difficulty breathing suffered by Mr. Clark after his diagnosis with Covid-19 constitute a serious medical need.").

The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) (quoting Rouse, 182 F.3d at 197). Deliberate indifference also includes "ignor[ing] a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." Helling v. McKinney, 509 U.S. 25, 33 (1993). See also Hemphill v. Hochberg, No. 07-2162, 2008 WL 2668946, at *5 (D.N.J. June 27,

2008) ("Eighth Amendment liability is not limited to indifference to current serious medical problems; the risk of serious future harm to an inmate's health may also constitute a claim under the Amendment.") (citing Helling).

Plaintiff alleges Defendants knew about the risk COVID-19 posed to the population of the Cumberland Jail because "the CDC, the State of New Jersey, medical experts, and various advocates . . . alerted them of [the heightened threat of COVID-19 in the Jail] as well as the preventative measures needed to protect against the further spread of COVID-19." SAC ¶ 25. Despite these warnings, "Defendants refused to provide necessary medical treatment and prevention measures . . . based on non-medical, but rather administrative and/or financial, reasons." Id. ¶ 46. "Plaintiff repeatedly requested to be tested when he felt sick, but that request was denied." Id. ¶ 36.

"Additionally, Plaintiff requested to be properly quarantined but was rather forced into quarantine with another inmate." Id. He claims he spent over 300 hours quarantining with another individual while "Plaintiff was suffering from breathing issues, a cough, and chills." Id. ¶ 5. See Gates v. Collier, 501 F.2d 1291, 1300 (5th Cir. 1974) (finding Eighth Amendment violation where "[s]ome inmates with serious contagious diseases are allowed to mingle with the general

11

prison population"). Essentially, Plaintiff alleges that not only did Defendants fail to implement protective measures until well into the pandemic, see id. ¶ 54 (alleging "[t]esting was not permitted by Defendants at the Jail until six or seven months into the Pandemic"), they took affirmative actions that made things worse, id. ¶¶ 26-27.

Defendants rely on the Third Circuit's decision in Hope v. Warden York County Prison, 972 F.3d 310 (3d Cir. 2020) for the proposition that Plaintiff has failed to state a claim. In reviewing a district court's order directing the release of immigration detainees under 28 U.S.C. § 2241, the Third Circuit concluded that the district court "abused its discretion when it held that Petitioners showed a substantial likelihood of success on the merits of their claims." Id. at 323. Nothing in Hope alters the pleading standards for civil rights claims; it only concluded that the detainees had failed to prove that "the Government knew of and disregarded an excessive risk to their health and safety." Id. at 329 (emphasis in original). See also Jones v. Ellis, et al., No. 21-13625, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) (citing Hope for proposition that "a detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the

12

requisite mental state, which is akin to recklessness."). That is not the question presently before the Court.

On a motion to dismiss under Rule 12(b)(6), the Court asks only whether Plaintiff has pled "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of his claims. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). It must "assume all . . . factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." Id. If Plaintiff's factual allegations are true, Defendants knew the risk that COVID-19, a deadly disease with serious aftereffects, posed to Plaintiff but failed to take action due to the costs and because they were understaffed. This goes beyond "mere negligence." See Andrews v. Cervantes, No. CIV S-03-1218, 2008 WL 1970345, at *1 (E.D. Cal. May 5, 2008), report and recommendation adopted, No. CIV S-03-1218, 2008 WL 2705405 (E.D. Cal. July 9, 2008) (allowing Eighth Amendment claim to proceed based on allegations that defendants were aware "of the spread of disease, yet refuse[d] to take any reasonable measures to shield plaintiff from the risk of harm"); Hemphill v. Hochberg, No. 07-2162, 2008 WL 2668946, at *5 (D.N.J. June 27, 2008) (allowing Eighth Amendment claim to proceed against doctor for "fail[ing] to inform inmates

13

of the nature of their ailment" and "communicat[ing] to the inmates that their medical condition was not contagious, thereby enabling the spread of scabies within the penal institution").

"The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference that 'shocks the conscience' for a substantive due process violation." Hope, 972 F.3d at 330.  This is a fact-intensive inquiry, and the Court cannot assess the reasonableness of Defendants' response on a motion to dismiss.  Plaintiff will ultimately have to prove that Defendants were deliberately indifferent, but he has satisfactorily alleged that they knew of and disregarded an excessive risk to his health and safety.  The Court will deny the motions to dismiss this claim.

E.    Count Two – Unconstitutional Punishment

Count Two of the SAC alleges unconstitutional punishment in violation of the Fourteenth Amendment.  "In accordance with the Supreme Court's decision in Bell v. Wolfish, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty." Hope, 972 F.3d at 325.  "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" Id. at 326 (quoting Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008) ("Hubbard

14

II")).  "'[T]he ultimate question' is whether conditions are
'reasonably related to a legitimate governmental objective.'"
Id. (quoting Hubbard II, 538 F.3d at 236)) (alteration in
original).  If detainees "are subject to conditions unrelated to
a legitimate governmental objective, 'we may infer "that the
purpose of the governmental action is punishment that may not be
constitutionally inflicted upon detainees qua detainees."'"  Id.
(quoting E. D. v. Sharkey, 928 F.3d 299, 307 (3d Cir. 2019);
Hubbard II, 538 F.3d at 232).  Courts must "consider the
totality of the circumstances of confinement, including any
genuine privations or hardship over an extended period of time,
and whether conditions are (1) rationally related to their
legitimate purpose or (2) excessive in relation to that
purpose."  Id. (citing Hubbard v. Taylor, 399 F.3d 150, 159-60
(3d Cir. 2005) ("Hubbard I")).

      The Third Circuit rejected the Hope detainees'
unconstitutional punishment claim because the district court did
not "meaningfully consider pertinent evidence on conditions
provided by the Government, including social distancing efforts"
at the detention facilities.  Hope v. Warden York Cnty. Prison,
972 F.3d 310, 327 (3d Cir. 2020).  "Considering all the
responsive measures specifically implemented to detect and to
prevent spread of the virus, the challenges of facility

administration during an unprecedented situation, and the purposes served by detention—Petitioners did not show a substantial likelihood of success on their claim that the conditions of their confinement constitute unconstitutional punishment." Id. at 329.  Again, this is not the question presently before this Court.  The only question is whether Plaintiff has plausibly alleged unconstitutional punishment.

Unlike the Hope detainees, Plaintiff is not alleging a theoretical exposure to COVID-19; he was exposed and did in fact contract COVID-19.  SAC ¶¶ 33, 50.  See Hope, 972 F.3d at 325 (noting detainees "asserted . . . that, if Petitioners are exposed to COVID-19 and if they contract the virus, their ages and medical conditions put them at 'imminent risk' of serious illness, including possible death." (emphasis in original)).  Plaintiff alleges that Defendants failed to take preventative measures and took actions that exacerbated the risk, such as quarantining multiple inmates in one room and denying testing to inmates who were experiencing COVID-19 symptoms.  SAC ¶ 27.  If Plaintiff's factual allegations are true, Defendants ignored warnings from various government agencies and actively took steps that endangered Plaintiff and the other inmates of the Cumberland Jail because of financial and staffing concerns.

16

Considering the totality of the circumstances alleged in the SAC, Plaintiff has plausibly alleged unconstitutional punishment.  Prison officials "may [not] be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms."  Helling v. McKinney, 509 U.S. 25, 33 (1993).  See also Hutto v. Finney, 437 U.S. 678, 682-83 (1978) (finding Eighth Amendment violation in part due to "some prisoners suffer[ing] from infectious diseases such as hepatitis and venereal disease" comingling with other inmates and sharing laundry facilities).  "We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."  Helling, 509 U.S. at 33.

Plaintiff alleges a dangerous, highly contagious disease was allowed to run rampant in the Cumberland Jail for months before Defendants took substantive action to address it. Defendants will have an opportunity to demonstrate the reasonableness of their actions, but it is plausible on the face of the SAC that Defendants' actions, or lack thereof, were

unrelated to a legitimate governmental objective.  The motions
to dismiss this claim will be denied.

F.   Count Three - Monell Liability

Count Three of the SAC seeks to impose liability on
Cumberland County itself.  "A municipality cannot be held liable
for the unconstitutional acts of its employees on a theory of
respondeat superior.  A plaintiff seeking to hold a municipality
liable under section 1983 must demonstrate that the violation of
rights was caused by the municipality's policy or custom."
Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014)
(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691
(1978)).

Plaintiff alleges Cumberland County "tolerated, permitted,
failed to correct, promoted and/or ratified a number of customs,
patterns or practices that condoned and/or required Wardens and
other employees (such as and including the Jail's Medical
Director) to turn a blind eye to and to not intervene with, the
lack of precautionary measures" in the Jail.  SAC ¶ 67.  These
policies and customs "failed to provide for the health, safety
and welfare of detainees, inmates, and the like, during
confinement, including but not limited to, reasonable and
necessary measures such as the lack of personal protective
equipment, sanitation measures, and social distancing."  Id. ¶

66.  Plaintiff alleges that he was exposed to and contracted COVID-19 as a result of these policies and customs.  Id. ¶ 69. Accordingly, Plaintiff has sufficiently alleged Cumberland County's liability under Monell.

G.   Qualified Immunity

Defendant Smith and Warren assert they are entitled to qualified immunity.  "[O]fficers are entitled to qualified immunity ... unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]"  Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original).

The Court denies qualified immunity at this time. The second amended complaint, when read in the light most favorable to Plaintiff, states claims for violations of his Fourteenth Amendment rights.  Moreover, "[t]hat the Eighth Amendment protects against future harm to inmates is not a novel proposition."  Helling v. McKinney, 509 U.S. 25, 33 (1993).

19

COVID-19 may be a new virus, but prisons have faced highly
communicable diseases before and have been found liable when
they failed to respond appropriately.  See Helling, 509 U.S. at
33-34; Hutto v. Finney, 437 U.S. 678, 682-83 (1978); Gates v.
Collier, 501 F.2d 1291, 1300 (5th Cir. 1974); Hazel v. Russell,
et al., No. 3:20-CV-0726, 2022 WL 17414908, at *3 (D. Nev. Dec.
5, 2022) (denying qualified immunity because "existing Supreme
Court precedent gave government officers fair warning that their
alleged failure to abide by or enforce compliance with NDOC
guidelines concerning a serious communicable disease [COVID-19]
was unlawful").

The Court will deny qualified immunity without prejudice.
Defendants may reassert the qualified immunity defense upon
factual development.

H.   Request to Stay

Defendants also ask the Court to stay Plaintiff's complaint
pending entry of a final order in the Class Action.  The Court
will exercise its discretion and decline the request.
Plaintiff's complaint concerns specific Defendants' actions
within a particular timeframe whereas the Class Action continues
to address the ongoing conditions at the Jail as a whole.  The
parties will have the opportunity to bring any specific concerns

to the Court's or the Magistrate Judge's attention as the matter proceeds.

I.   <u>Motion to Seal</u>

The parties jointly move to seal Defendants' brief and exhibits in support of their motion to dismiss, docketed as ECF No. 73.  ECF No. 90.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records.  The public's right of access extends beyond simply the ability to attend open court proceedings. Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." <u>In re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001) (internal citations and quotation marks omitted).  A party seeking to seal portions of the judicial record from public view bears party "bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." <u>Millhouse v. Ebbert</u>, 674 F. App'x 127, 128 (3d Cir. 2017) (per curiam) (internal quotation marks and citations omitted).  In deciding a motion to seal, the Court considers:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which warrants the relief sought;

(c) the clearly defined and serious injury that would result if the relief sought is not granted;

(d) why a less restrictive alternative to the relief sought is not available;

(e) any prior order sealing the same materials in the pending action; and

(f) the identity of any party or nonparty known to be objecting to the sealing request.

L. Civ. R. 5.3(c)(3).

Plaintiff alleges Defendants denied him medical care and unconstitutionally punished him based on their inadequate response to the COVID-19 pandemic in the Cumberland Jail.  Filed under temporary seal is Defendants' brief in support of their motion to dismiss, ECF No. 73; Exhibit A, the CCDOC Inmate Handbook, ECF No. 73-1 at 1-38; and Exhibit B, Inmate Request Forms filed by Plaintiff, ECF No. 73-1 at 39-88.  The parties do not make any arguments why Exhibit A should remain sealed, and the Court does not see any.  Defendants must file Exhibit A on the public docket.[4]

The parties seek to seal Exhibit B, Plaintiff's Inmate Request Forms, because the forms "contain personal and sensitive medical information of Plaintiff, other inmates, and staff

---

[4] Exhibits A and B are filed as a single document, ECF No. 73-1.

members of the CCDOC." ECF No. 90-1 at 5. "These inmate request forms also contain personal identifying numbers of Plaintiff and staff members of the CCDOC whom are not parties to this litigation." Id. They allege that "[r]edaction is not feasible; nearly all information contained therein would be redacted." Id.

Plaintiff has a legitimate privacy interest in his medical records, see Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001), but he inserted the relevance of his medical record and conditions into this action by alleging Defendants denied him necessary medical care. Plaintiff has a right to have his complaint adjudicated in a public process, and the public has a right to information about how county jails are responding to a public health crisis. "The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).

The Court has reviewed Exhibit B and has found only two instances of another inmate's name appearing in the forms. ECF

No. 73-1 at 53-54.  Defendants may redact that inmate's name, leaving the first and last initials, with little trouble.  The information about staff appears limited to their position in the prison and any involvement in reviewing Plaintiff's grievances or providing medical treatment.  The grievances do not contain "private" information about jail staff such that sealing would be appropriate.  Moreover, Exhibit B contains printouts of news articles.  Id. at 86-88.  These articles are publicly accessible online and do not qualify for sealing.  The Court will keep the unredacted version of Exhibit B under seal, but Defendants must file a version with appropriate redactions on the public docket.

Finally, the parties ask the Court to seal Defendants' brief because it "references Plaintiff's medical condition and treatment requests."  ECF No. 90-1 at 7.  The Court will deny the request to seal the brief for the reasons previously discussed.  The Clerk will be ordered to lift the temporary seal on the brief.

IV.  CONCLUSION

For the reasons set forth above, the Court will deny the motions to dismiss, Fed. R. Civ. P. 12(b)(6), and grant the cross-motion to amend, Fed. R. Civ. P. 15(a).  Plaintiff will file a second amended complaint that conforms with his proposed second amended complaint within 10 days of this Order.  The

motion to seal is granted as to Exhibit B, but Defendants must file a version with appropriate redactions on the public docket. The motion to seal is otherwise denied.

An appropriate Order follows.


Dated: December 16, 2022          s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.